The next case is Nuvasiv, Inc. v. Absolute Medical. Brian Bush is here for the appellates, Absolute. And Mary Taylor Gallagher is here for the appellee, Nuvasiv. We're all settled there? Everybody settled? Mr. Bush, you can begin. Thank you. Good morning, Your Honor. I'm with the Maintenance Court. Again, my name is Brian Bush. And I'm here on behalf of the defendant appellates. And we are asking the Eleventh Circuit to look at two things. First, we're asking the court here to reverse the lower court's decision from the Middle District of Florida, which vacated the binding arbitration award under an equitable estoppel theory, after the three-month window mandated by the Federal Arbitration Act had expired. And second, if untimely challenges to an arbitration award are permitted under the Federal Arbitration Act, we contend the district court erred in its application of the equitable tolling doctrine. Well, one of the decisions we have to make today is whether or not equitable tolling applies to the statute of limitations in the Federal Arbitration Act. Let me begin by asking you this question. Mr. Hawley flat out lied and violated his oath to tell the truth during the arbitration hearing when he said there was no one else in the room and no unauthorized person could communicate him while he was testifying. Is that true? That is not true, Your Honor. I know that's what the district court believed. We believe that was an error that was done without having an entry hearing and without hearing from Mr. Hawley directly who had put forth an affidavit saying he did not and was not communicating with Mr. Souffleris during the pendency of the arbitration hearing. He wasn't communicating with him, but there was someone else sending him messages in that room, right? Mr. Souffleris, who was another witness who was in a different location from Mr. Hawley, was attempting to text Mr. Hawley during the pendency of the arbitration during Mr. Hawley's testimony. So he was sending him messages while he was testifying during the arbitration hearing? Yes, he was. Okay. Yes. And so when the district court said that there was communication, is that a finding of fact that we apply a clearly erroneous standard of review to? Well, I think that's a conclusion that the court reached. I mean, I'm not quite sure how to answer that question. Even though that's… Tell us whether or not we apply a clearly erroneous standard of review to that finding by the district court. I think it's an opinion by the court that was reached without the benefit of having any sort of evidentiary hearing at all, and it was error by the court to conclude that. But to answer your question, Mr. Souffleris was attempting, whether it was a free flow of Mr. Souffleris putting what he thought the answer should be in text messages or not, he was attempting to communicate with Mr. Hawley. The question that the district court answered, and we believe answered incorrectly, was that Mr. Hawley was receiving those text messages, reviewing those text messages, and changing his testimony as a result of the text messages. And so your client held the ball until the time ran out to file a motion to set aside the arbitration determination. That's an entire issue, Your Honor. So there was a series of discovery requests that were sent to our clients post-arbitration. And those discovery requests were not timely responded to. The discovery requests were not required to respond to those discovery requests until outside of the three-month window mandated by the Federal Arbitration Act. And so the discovery requests were served on us right at the end of that three months. So when we had 30 days to respond, there was a delay in getting all of the requested information to the plaintiffs here. In this case, there was a considerable amount of technology information that they had requested. And so we had to hire IT professionals to go in and dig through our phones and computers. And by the time that those were actually provided, it was certainly past the 30-day window that we had to respond. But I think the important issue is we weren't required to respond to that until outside of the three-month window. Okay, so I think your argument has to be that equitable tolling doesn't apply to the statute of limitations set forth in the Federal Arbitration Act. And what's your best authority for that proposition? So the best authority for the fact that the equitable tolling does not apply starts with the statute itself, Judge. And the statute itself specifically mandates that any sort of motion to vacate or set aside the award must, and Congress uses the word must, be filed and presented within three months of when the arbitration award is taken. And it is clear, Your Honor, in this case that that was not done. In further support of the plain language of the statute, Your Honor, the United States Supreme Court had to give us some guidance in interpreting the Federal Arbitration Act. And the U.S. Supreme Court in a case called Hall v. Mattel, it was a 2008 case, there the court was asked to look at an expansion of the grounds that they gave the award. And in looking at the Federal Arbitration Act in its entirety, the Supreme Court told us that the FAA provides for expedited judicial review and the use of the term must in section 9 of the Federal Arbitration Act carries no hint of flexibility and unequivocally instructs courts how to proceed. Counsel, we have precedent in the Orion case that the use of the word must is and should be rejected, that it's a mandatory prescription. I mean, what we're dealing with here, right, is whether this is jurisdictional or claims processing. I mean, that's the question or the answer really to Judge Wilson's concern. So what we know now is there's nothing in section 12 that appears to state that it's jurisdictional. It doesn't necessarily abridge or limit the district court jurisdictional capacity. No adjugatory capacity is limited by its plain meaning. So knowing that the Supreme Court has cautioned us, as you know, with the taking words like must and building them up to turn this into a jurisdictional bar, how do we navigate this? Because it appears, and maybe you want to address how the MOVE Court looked at it in the Ninth Circuit, but certainly it does appear that at least one other circuit has found it to be subject to equitable tolling, right? Well, certainly the Ninth Circuit did in the MOVE case, and that's what opposing counsel in the lower court relied on for that position. And we believe that the MOVE Court simply ignored the instructions from the Supreme Court in Hall and failed to look at the distinction between a claims processing rule where equitable tolling might be permitted. It's not always, but might be permitted. Or whether or not section 12 of the FAA is a limit on the court's adjudicatory authority or jurisdiction where we know equitable topple is not permitted. And the U.S. Supreme Court has offered some guidance into that analysis, and there are several cases. The Sebelius case from 2013, the Gonzales case in 2012, the Henderson case in 2011, and the courts acknowledged that they had not been crystal clear on how we're supposed to differentiate between a claims processing rule and something that is jurisdiction. But you would agree with me, for example, the quiet, fun, wrong case from the Supreme Court has made it clear that we look for a clear statement from Congress. What that may be, we could debate, right? But it's got to be something on its face that would make it clear to us that it's jurisdictional, right? Right. They look at statements in the text of the statute. The courts have told us to look at the context of the law. And prior court interpretations have been the guidance that have followed later. And I would say that in looking at the standards that the Supreme Court has laid out for this analysis, the best case that we found that went through that process in detail was actually a case from the Nebraska Supreme Court called Caro, which is NAU country. While Move, Inc. paid lip service to the fact that this was a jurisdictional claims-based process, it didn't actually go through and do the analysis that is required that the Supreme Court has given us guidelines on. And the Caro case did that in exhaustive detail. I certainly won't review every part of that. But I will say that in looking at Section 12 of the FAA, what the Caro court said was Section 12 describes a statutory precondition that must be met before a judicial review and analysis can take place. Section 12 is not a time limit for initiating a claim that you would typically see in the claims processing type of analysis. Furthermore, the entirety of the FAA is premised on expedited judicial review with no hint of flexibility as outlined by the Supreme Court in Hall. And finally, the term jurisdiction or jurisdictional is used throughout the FAA statute, including in Section 9. So, if the court takes the time to go through and actually do the analysis that the Supreme Court has laid out for us, and you follow the factors that the Caro court relied upon, it is clear that here we are not talking about a three-month window of a claims process. It is not initiating a claim. It is initiating a judicial review. And when you talk about a judicial review in the context of the Federal Arbitration Act, it is clear that it becomes jurisdictional in nature and not a basic statute of limitations where equitable tolling could apply. But you would agree with us that to follow that logic, we have to adopt Caro's view that this is essentially tending on to an appeal process, meaning that the FAA, the only way it works, I think, to be analogous, is we have to treat Section 12 as essentially a time bar in the appellate context because that is how Caro seemed to analogize it, right? That is very clear, Your Honor. Okay. And I think that when you look at the totality of the FAA, and when you are looking at both Section 9, which talks about a one-year window to affirm the arbitration award, it talks about that in jurisdictional terms, Section 9 does. And so when you analyze that with respect to Section 12, again, now we are talking about a 90-day window to review. I think the appropriate response there is to look at it as a jurisdictional appellate-level type review. Thank you. All right. Thank you, Mr. Bush. Ms. Gallagher? May it please the Court. Mary Taylor Gallagher and Diana Evans on behalf of the appellee, newvasive. This Court should affirm the District Court's order vacating the arbitration award for three reasons. First, the 90-day statute of limitations found in 9 U.S.C. Section 12 may be equitably told in limited circumstances. Second, the Court did not commit clear error when it made the factual findings that newvasive diligently pursued its rights and that extraordinary circumstances exist in this case to equitably told the 90-day statute of limitations. And third, the District Court did not commit clear error when it made the factual finding that newvasive had established that there was clear and convincing evidence of fraud in the arbitration, that that fraud could not have been discovered prior to or during the arbitration, and that that fraud materially related to an issue in the arbitration. Counsel, can I ask you one question? Let's assume for a minute that you're right on equitable tolling, and we get through all of that. I'm concerned with the materially related aspect of the fraud. The key case from our circuit is Bonar, and since then there was a subsequent case, the Floridians case for Solar Choice. I don't know that the circuit has ever, in a published opinion, outlined this nexus requirement. And the reason why I'm saying that is my understanding is that the arbitration panel made an independent ruling regarding damages, the model for damages and its flaws and causation, and none of the, quote-unquote, coach's testimony played a role in the arbitration panel's decision. So what would you have us do with that materiality, quote-unquote, nexus? Because it appears that there's no nexus between the purported procured fraud and the arbitration award. And I can see that Bonar has never been that specific, and we know that the district court said it's materially related, which we can, I think, agree is a little broader. But if I can't tie that misrepresentation or that fraud to the award, what does that leave me with? Yes. So the Bonar court, you're correct, Your Honor, did not go into a deep analysis of what this nexus means. What we do know is that, let's see, does not require, the Bonar court did say that materially related to an issue in the arbitration does not require proof that the result in the arbitration would have been different. And, in fact, we have another recent case that was decided after we submitted our briefs, Your Honor, and that is France v. Bernstein. It's a Third Circuit opinion. And in that case, the court cited to Bonar in saying that if there is fraud, to be materially related does not mean that the court has to determine that the result of the arbitration would have been different. Here we have no idea what would have happened if Mr. Hawley had not been coached in his testimony and if he had told the truth. I was going to say, would we know that if the court had conducted an evidentiary hearing, it would have been better equipped and qualified to make that determination? We still would not have known what the arbitration panel would have done. We don't know what his testimony would have been. The court noted that it wasn't just a question or two. The court looked at the time-stamped records, noted that Mr. Souffleris, who was the owner of the defendant, who texted his subordinate, who was a witness and his employee, and told this individual to keep his phone on during his testimony. Mr. Hawley responded okay. We know that for the entire two hours of his testimony before the arbitration panel that Mr. Souffleris texted him throughout and that Mr. Hawley's answers conformed throughout the entire two hours of his testimony. We don't know what questions would have been asked by either on direct or on cross-examination. We don't know what questions would have been asked by the arbitration panel had Mr. Hawley testified on his own and had he not testified in accordance with Mr. Souffleris' instructions. Mr. Hawley did submit a declaration. The court, after looking at the time-stamped of the two hours of the testimony, looking at exactly what Mr. Souffleris instructed Mr. Hawley, and then looking at what Mr. Hawley responded, the court found that Mr. Hawley's declaration was not credible. But I guess to Judge Wilson's point, the arbitration opinion, the award, makes no mention whatsoever regarding this particular line of testimony. It only focuses on the inability to provide a damage model. And so if I look at it in isolation, it's clearly separated, the panel's decision that is, from the alleged fraud. They never even looked at that testimony. It's as if it was a non-starter. So to Judge Wilson's point, would it require there to be some finding to ascertain whether that materiality spilled into the decision or can't we just look at the arbitration opinion and say they made it very clear. It wasn't an issue for them because the damages model was flawed. I don't think that we have to look to the arbitration award itself because, again, the courts who have addressed this have said you don't have to show that the outcome would have been different. And, in fact, the court had said in the France case, the Third Circuit case that came out in August, that obtaining an award by perjured testimony constitutes fraud. And I don't know how you separate that perjured testimony from the award itself. Well, you would agree with me it's different from MOVE, right? I think MOVE, one of the panelists for the entire arbitration was compromised. He was not up to par. So the entire proceeding was almost tainted by the fraud. That's why I'm seeing a little difference here because it seems that it didn't really make it to the award. Or would you say it's impossible to tell, I guess, is your proposal? It's impossible to tell, and I would say that the entire proceeding was tainted by fraud. Mr. Hawley took not one but two oaths. He took an oath that he would tell the truth. He took an oath that he would testify via Zoom because of COVID restrictions, that there was no one in the room that could communicate with him during his testimony, and there was no one in the room that could communicate with him during his testimony. He lied on both accounts. His entire testimony, he was a key witness in this arbitration. Mr. Soufleris was the owner of Absolute Medical. He employed Mr. Hawley and another individual, Mr. Miller. These individuals ultimately left working with Nuvasiv, flipped all of Nuvasiv's business to a competitor, and some of the key issues before the arbitration panel were whether Mr. Hawley was subject to a non-compete. His testimony at the hearing was that he was not, that he did not sign one in 2017. Well, that testimony comports to the instruction that Mr. Soufleris gave him. We have no idea what the panel would have found there and what other testimony would have been elicited if Mr. Hawley had told the truth. One of the things that I believe the arbitration panel pointed to was the fact that there might have been other competitive factors that caused the loss. Did the testimony relate to those things? Yes, it did, Your Honor. The panel pointed out that Dr. Sawin, who was one of the main surgeons who purchased Nuvasiv products through the defendants, testified that he was already going to move his business to Alphatect because of what he described as an eroding corporate culture and his dissatisfaction with senior management. On cross-examination, counsel sought to question Mr. Hawley about an email that Mr. Hawley had sent to the CEO of Nuvasiv that Mr. Soufleris was copied on where he talks about the great corporate culture and just all the fantastic things that Nuvasiv has. When questioned about that, after Mr. Soufleris instructed Mr. Hawley to say that this email was sent to get on his boss's good side and that it was just political stuff, that's exactly what Mr. Hawley said in response to the question. By lying under oath, by conforming his answer to what Mr. Soufleris instructed him, Mr. Hawley deprived both counsel on cross-examination and the panel on hearing a truthful answer and exploring what the panel did find to be a reason that this business moved based off of what Dr. Salwin said did not have the benefit of Mr. Hawley's truthful testimony. We have no idea how that would have impacted the panel's findings, and we can't know because he lied throughout the entirety of his testimony. So tell me then now how would your client be prejudiced if the judge had remanded the case back to the arbitration panel? How would your client be prejudiced by that? Yes, Your Honor. This case is still pending before the district court because there are multiple counts filed in the original complaint. The court stayed several of those counts. The court ordered this one breach of contract claim to arbitration, and the court allowed some discovery on the other counts. That proceeding and the trial in that district court case has been waiting for the outcome of this arbitration. The lawsuit was filed in 2017. In 2019, defendants filed a motion asking that that one count be compelled to arbitration. This case was set to be tried November 29th of 2021. We received the text message production, which was 70 days late under the court order, November 4th of 2021. In the 11 days following that period, we reviewed the thousands of text messages. We obtained a timestamp copy of the arbitration testimony, and we've asked for leave from the district court to file a motion to vacate. That all occurred within, I believe, 11 days of receiving the text message production. As the court noted in its order vacating the arbitration award and exercising its discretion under Section 10 not to remand it to the arbitration proceeding, that Nuvasiv would be prejudiced if at this point, five years down the line, it was forced to go back and arbitrate a second time when it was through no fault of Nuvasiv that a second arbitration would have been necessary. It was because of the fraud of the defendants and for their lying under oath and their perjured testimony and that the case was ready to be tried. The court had to continue the November 29th, 2021 trial in order to consider Nuvasiv's motion to vacate the arbitration award. The court continued that into early 2022 to allow it time to consider the motion. Once the court ruled on the motion to vacate, the court determined that Nuvasiv would be prejudiced if it was required to go back, have another costly arbitration, have a decision, a final award made from that arbitration and then come back to the district court and have a trial on the remaining claims. Let's go back to the equitable tolling issue and specifically whether or not the language is jurisdictional. Section 12 says that the motion must be served. It uses mandatory language of must. Does that change the analysis at all? It does not. And, Your Honor, we look to an opinion from the Supreme Court in Boeschler v. Commissioner of Internal Revenue Service. This opinion was issued in April of 2022 and it came out after we submitted our brief in this case. I'll let you continue to talk about that case, but I just want to note that in that case, the language was may. A person may petition rather than must. Right. The court there first was looking to see whether it was jurisdictional. And so here we've got the question of is it jurisdictional and then does must, does that raise some sort of jurisdictional requirement? And it does not, Your Honor. We know that in the Holland v. Florida case, the Supreme Court, when analyzing a time limit using the word shall, found that equitable tolling could apply. And we know that this court in a prior case, it's an unpublished case, but this court has said that must means shall. And so where the Supreme Court has extended equitable tolling, where a statute had a time limit that said shall, it should also extend that same equitable tolling where a time limit has the word must. In the Boeschler case, defendants rely on the Nebraska Supreme Court decision in Cairo for the proposition that this is a jurisdictional limitation and that it's not a statute of limitation that can be equitably tolled. Cairo was wrongly decided. And we know that because Cairo tries to read the FAA as a whole and tries to say that because the word jurisdiction is used in Section 9, that it must also mean jurisdiction for Section 12. The court, first off, in the Badgerow opinion, Badgerow v. Walters that came out also after we submitted our brief, in that case the court, looking at the FAA, said that you can't look at the language in Section 4 of the FAA and then import that language into Sections 9 and 10, which the court actually said did not contain anything about subject matter jurisdiction. So the Cairo court does exactly what the court in Badgerow said you may not do. You may not read the FAA as a whole and take language from one section and try to apply it to another section. The other thing that we note is that the Cairo court tried to rely on the fact that the word jurisdiction was in Section 9. Well, jurisdiction is not in Section 12. There's nothing in Section 12 that says that filing from the 90-day statute of limitations is jurisdictional. And then we also note in Badgerow v. Walters, again the case that came out in April after we filed our brief, that the court said you look at traditional tools of statutory construction. They must plainly show that Congress imbued a procedural bar with jurisdictional consequences. And the court says to satisfy the clear statement rule, the jurisdictional conditions must be just that clear. There are multiple ways to read Section 9 before you even get to Section 12. And in order for the court to find a jurisdictional bar to filing outside of the 90-day limit, it must be clear. And it is not clear in Section 9, and it is certainly not clear in Section 12. All right. Thank you, counsel. Mr. Book, do you have some time for rebuttal? Yes, Mr. Booth, Your Honor. Picking up on the Barnard decision and Judge Ruiz's questions on whether the fraud here materially relates to the arbitration panel's decision, I think it's important to understand that there were approximately ten witnesses that testified in the arbitration. And there were two primary issues that the arbitrators were deciding. Number one was whether or not there was a breach of the distributorship agreement. And it found unanimously that there was a breach of the distributorship agreement. The second issue the panel had to decide was whether or not there were any damages. And in order to figure out whether or not there were damages, the plaintiff in that case, Nuvasiv, had put up an expert witness, an economist, a financial expert witness, and the defendants put up an expert witness as well. So we had an arbitration dealing with damages that was the battle of two experts. And that is where, if the court looks closely at the arbitration decision, that is where the arbitrators, the three-judge panel decided, Nuvasiv is not an expert. It failed to prove that it had suffered any damages. It didn't have anything to do with the testimony of the fact witnesses and Mr. Hawley's testimony. Even the instances pointed out by the court have nothing to do with that expert damage analysis that the arbitration panel had picked up on. They spent several pages going through why Nuvasiv's damage analysis was flawed, and they did not accept it. And again, that did not materially relate in any way to anything Mr. Hawley was testifying to when he was on direct or cross. Thank you. All right. Thank you, counsel. The court will be in recess for 15 minutes. All rise. Thank you. Thank you.